FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 29, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANIE ELIZABETH G., <br><br>   Plaintiff, <br><br>   v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br>   Defendant. | No. 1:19-CV-03046-RHW <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision, which denied her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and her application for supplemental security income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-6, 12-34. After reviewing the administrative record and briefs filed by the parties, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed her applications for disability insurance benefits and supplemental security income on March 24, 2015. *See* AR 15, 234-42, 243-48. In both applications, she initially alleged disability beginning on July 25, 2014.[1] AR 236, 243. Plaintiff's applications were initially denied on July 16, 2015, *see* AR 151-54, and on reconsideration on October 28, 2015. *See* AR 159-181. On November 23, 2015, Plaintiff filed a request for a hearing. AR 182-83.

A hearing with an Administrative Law Judge ("ALJ") occurred on October 2, 2017. AR 49-86. On March 19, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits or supplemental security income. AR 12-34. On February 6, 2019, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On March 12, 2019, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, her claims are properly before this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

---

[1] Plaintiff later amended her alleged onset date to coincide with her fiftieth birthday, which was on February 13, 2015. AR 359. However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER**
~ 2

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does

not have a severe impairment the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If an impairment does, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the

1  Commissioner's decision will be disturbed "only if it is not supported by substantial
2  evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir.
3  2012) (citing § 405(g)). In reviewing a denial of benefits, a court may not substitute
4  its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.
5  1992). When the ALJ presents a reasonable interpretation that is supported by the
6  evidence, it is not the court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d
7  853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more
8  than one rational interpretation, if inferences reasonably drawn from the record
9  support the ALJ's decision, then the court must uphold that decision. *Molina v.*
10 *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

11      Moreover, courts "may not reverse an ALJ's decision on account of an error
12 that is harmless." *Id.* An error is harmless "where it is inconsequential to the ultimate
13 nondisability determination." *Id.* at 1115. In order to find that an ALJ's error is
14 harmless, a court must be able to "confidently conclude that no reasonable ALJ,
15 when fully crediting the testimony, could have reached a different disability
16 determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The burden
17 of showing that an error is harmful generally falls upon the party appealing the
18 ALJ's decision. *Molina*, 674 F.3d at 1111.

19 ///

20 ///

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 50 years old on the amended alleged date of onset, which the regulations define as a person closely approaching advanced age. AR 89, 359; *see* 20 C.F.R. §§ 404.1563(d), 416.963(d). She attended school through the fifth or sixth grade and attended special education classes. AR 54, 264, 360. She can communicate verbally in English but her ability to read or write is limited. AR 67, 74, 262, 500. She has past work as an agricultural produce sorter for a fruit company, as an industrial cleaner for a wine company, and as a caregiver for the Department of Social and Health Services. AR 79, 265, 284-88.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not disabled as it is defined in the Act at any time from February 13, 2015 (the amended alleged onset date) through March 19, 2018 (the date the ALJ issued his decision). AR 16, 28.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. AR 17.

**At step two**, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, obesity, depressive disorder, anxiety disorder, personality disorder, and intellectual disorder. AR 17.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 17-18.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), albeit with some additional limitations. AR 20. With respect to her physical abilities, the ALJ found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. AR 20. She could stand and walk for six hours in an eight-hour workday and also sit for six hours in an eight-hour workday. AR 20. She could push and pull without limitation. AR 20. She could frequently stoop and occasionally kneel, crouch, crawl, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. AR 20. She could not be exposed to extreme cold, vibration, hazardous machinery, or unprotected heights. AR 20.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could understand, remember, and carry out simple instructions. AR 20. She could make judgments commensurate with the functions of unskilled work—*i.e.*, "work that needs little or no judgment to do simple duties, work where a person can usually learn to do the job in 30 days, and work where little specific vocational preparation and judgment are needed." AR 20. She could respond appropriately to supervision and deal with occasional changes in work environments. AR 20. However, she could

not work in close coordination with coworkers doing tasks requiring teamwork, nor could she have contact with the general public. AR 20.

Given these physical and mental limitations, the ALJ concluded that Plaintiff could do her past job as an agricultural produce sorter as the job was generally performed. AR 27-28. Based on the vocational expert's testimony, the ALJ found that this job did not require any activities that were precluded by Plaintiff's residual functional capacity. AR 27.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) erred by not including fibromyalgia as one of her severe impairments at step two of the sequential evaluation, (2) improperly weighed the medical opinion evidence, (3) erred in not approving her claim in accordance with Medical-Vocational Guideline Rule 202.09, (4) improperly discredited her subjective pain complaint testimony, and (5) erred in finding that she could perform her past work as an agricultural sorter. ECF No. 13 at 4-17.

## VII.   Discussion

**A.    The ALJ Erred at Step Two by Not Including Fibromyalgia as One of Plaintiff's Severe Impairments**

Plaintiff argues that all of her medical providers unanimously agreed that she suffers from fibromyalgia and that the ALJ therefore erred by not including this condition as one of her severe impairments at step two. ECF No. 13 at 4-11. The Commissioner appears to concede that this was error but argues that the error was

harmless because Plaintiff does not identify any limitations from this condition that were not already included in the residual functional capacity. ECF No. 14 at 3-5.

At step two in the sequential evaluation process, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The claimant has the burden to establish that he or she (1) has a medically determinable impairment and (2) that the impairment is severe. 20 C.F.R. §§ 404.1512, 416.912(a). To be severe, an impairment must significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

Moreover, to establish the existence of a severe impairment, the claimant must provide objective medical evidence—a claimant's statements regarding his or her symptoms are insufficient, as are a claimant's reports of a diagnosis. 20 C.F.R. §§ 404.1521, 416.921. When a claimant produces objective medical evidence, however, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28).

When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point "to a host of diagnoses scattered throughout the medical record." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or.

1    2019). Rather, to establish harmful error, a claimant must specifically identify

2    functional limitations that the ALJ failed to consider in the sequential analysis. *Id.*;

3    *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

4    In this case, multiple treating and examining physicians opined that Plaintiff

5    has fibromyalgia. In October 2015, Plaintiff's longtime primary care physician,

6    Katheryn Norris, D.O., referred Plaintiff to internist Flint Orr, M.D., because she

7    suspected possible rheumatoid arthritis. AR 1399. Dr. Orr examined Plaintiff and

8    determined that his physical examination did not support a diagnosis of

9    inflammatory arthritis. AR 1400. Instead, he believed that fibromyalgia was the most

10   likely diagnosis. AR 1400-01. He recommended a variety of additional laboratory

11   tests and imaging studies. AR 1401.

12   Plaintiff completed the additional testing. AR 1403. Upon reviewing it, Dr.

13   Norris agreed with Dr. Orr that Plaintiff had fibromyalgia and added the condition to

14   Plaintiff's treatment plan. AR 1411-12; *see also* AR 1414, 1419, 1421, 1425-26,

15   1433, 1438, 1441. Dr. Norris opined that Plaintiff's fibromyalgia prevented her from

16   performing any type of work on a reasonably continuous, sustained basis. AR 1688.

17   In June 2016, Dr. Norris referred Plaintiff to rheumatologist James Byrd,

18   M.D., Ph.D. AR 1578. Dr. Byrd examined Plaintiff and documented greater than 11

19   tender points. AR 1580; *see also* AR 1591, 1598, 1602, 1610, 1614. He also

20   documented "diffuse allover body pain" in Plaintiff's muscles, joints, and skin. AR

1579. He opined that her presentation was "most consistent with fibromyalgia," but noted that this was "a diagnosis of exclusion" and wanted additional laboratory work done. AR 1580. He later diagnosed fibromyalgia. AR 1592, 1599.

In October 2016, Dr. Byrd stated that Plaintiff could not work with her condition. AR 1599. In July 2017, he again opined, "In review of her severe fibromyalgia symptoms, it is my professional opinion that I do not think she can work in any capacity." AR 1615. He again reiterated this opinion in a separate medical questionnaire. AR 1575.

Dr. Norris later referred Plaintiff to psychiatrist Pedro Fernandez, M.D., who diagnosed major depressive disorder, chronic insomnia, and fibromyalgia. AR 1667. Dr. Fernandez noted that the prognosis for Plaintiff's fibromyalgia was poorer because it coexisted with depression and anxiety. AR 1667. He opined that her fibromyalgia "worsen[ed] exponentially her capacity to work because this condition has a very strong emotional component and also her emotional condition worsens this somatic illness." AR 1687.

To summarize, four separate physicians diagnosed Plaintiff with fibromyalgia and at least two believed that this condition precluded her from working altogether. As noted above, an ALJ's conclusion that a claimant lacks a severe impairment must be "clearly established by medical evidence." *Webb*, 433 F.3d at 687. And here there is *no* medical evidence supporting the ALJ's conclusion—no medical provider

opined that Plaintiff does not have fibromyalgia and, in fact, the medical evidence is unanimous that she does.

The Commissioner does not dispute that the ALJ erred by not including fibromyalgia as a medically determinable impairment at step two. *See* ECF No. 14 at 3-5. However, the Commissioner argues that any error was harmless because "the ALJ sufficiently accounted for any limitations caused by Plaintiff's impairments in the residual functional capacity finding." *Id.* at 3.

The Commissioner is incorrect. Both Dr. Norris and Dr. Byrd believed that Plaintiff could not work at all due to her fibromyalgia symptoms. AR 1575, 1688. These opinions are plainly at odds with the residual functional capacity finding, in which the ALJ determined that Plaintiff could perform light work. *See* AR 20. Assuming (without deciding) the truth of these opinions, the Court cannot "confidently conclude" that the error was harmless. *Marsh*, 792 F.3d at 1173; *see Oudinot-Robertson v. Berryhill*, 2017 WL 4182807, at *1 (D. Or. 2017) (Aiken, J.) (ALJ's error at step two in not including fibromyalgia as a medically determinable impairment was not harmless because the ALJ excluded fibromyalgia symptoms from consideration at steps four and five). On remand, the ALJ shall include fibromyalgia as a severe impairment at step two and then consider the limiting effects arising from this condition in determining Plaintiff's residual functional capacity.

B.  **The ALJ's Consideration of the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 13 at 4-11. Specifically, she argues the ALJ erred in weighing the medical opinions from four providers: (1) Dr. Byrd, (2) Dr. Norris, (3) Dr. Fernandez, and (4) examining psychologist Cecilia Cooper, Ph.D. *Id.*

1.  **Dr. Byrd and Dr. Norris**

The ALJ gave no weight to the medical opinions of Dr. Byrd and Dr. Norris, who both opined that Plaintiff could not work at all. AR 26; *see* AR 1575, 1615, 1688. The ALJ's primary reasoning was that they both based their determinations on Plaintiff's diagnosis of fibromyalgia, which the ALJ did not believe was a medically determinable impairment. However, as discussed, the uncontroverted medical evidence establishes that Plaintiff has this condition. The ALJ also stated that "Dr. Byrd himself indicated that [Plaintiff] had less than 11 positive tender points, and he did not document pain in all 4 quadrants of her body." AR 26. This is plainly incorrect. AR 1579-80, 1591, 1598, 1602, 1610, 1614 (documenting greater than 11 tender points and "diffuse allover body pain"). Therefore, this was an improper basis upon which to discount their opinions.

However, the Commissioner argues that the ALJ offered another reason for discounting Dr. Byrd's and Dr. Norris's opinions: that they were conclusory and unexplained. ECF No. 14 at 10. Based on the current record, the Commissioner is

correct that this was a proper basis for discounting Dr. Byrd's and Dr. Norris's opinions as they related to Plaintiff's capacity for work—neither of them gave a substantive explanation for their opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). On remand, however, Plaintiff will have an opportunity to supplement the record. Additional medical evidence may undermine this rationale as a basis for discounting Dr. Byrd's and Dr. Norris's opinions.

### 2. Dr. Fernandez

The ALJ mainly rejected Dr. Fernandez's opinion on the grounds that he based his determination on Plaintiff's diagnosis of fibromyalgia, which the ALJ did not believe was medically determinable. AR 26. As discussed, this was incorrect.[2] However, the ALJ also reasoned that Dr. Fernandez did not explain "how exactly [Plaintiff's] fibromyalgia impacted her recovery from depression and anxiety." AR 26. At least based on the current record—which Plaintiff will have the opportunity to supplement on remand—this was proper. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

### 3. Examining psychologist Cecilia Cooper, Ph.D.

---

[2] Moreover, the ALJ did not acknowledge or consider that Dr. Fernandez also diagnosed Plaintiff with major depressive disorder and insomnia. *See* AR 26.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER**
~ 14

At the conclusion of the hearing in this case, the ALJ determined that it was necessary to further develop the record with respect to Plaintiff's alleged illiteracy. AR 83-85. The ALJ referred Plaintiff to Dr. Cooper for a psychological consultative examination. AR 368.

Dr. Cooper evaluated Plaintiff on December 20, 2017. AR 1695-98. She apparently understood the ALJ's request to be "for non-English speaking IQ testing." AR 1695. She then administered a series of tests and concluded that Plaintiff's visual immediate memory skills and ability to carry out simple instructions with closely related steps were not significantly impaired, but that Plaintiff did have trouble remembering and completing complex instructions. AR 1696. Dr. Cooper also administered the Wechsler Adult Intelligence Scale, which resulted in a full-scale IQ of 59. AR 1697. She concluded that Plaintiff's test scores were "indicative of significantly lower than average intellectual functioning." AR 1698.

The ALJ outlined Dr. Cooper's findings, noting that Plaintiff did not have a significant visual memory impairment, that she could carry out simple instructions with closely related steps, but that she had trouble with complex instructions. AR 26. The ALJ also noted that Plaintiff's IQ score was 59 and that the remainder of her test scores, except for perceptual reasoning, were in "the extremely low range." AR 26. The ALJ then incorporated Dr. Cooper's finding that Plaintiff could only carry out

simple instructions into the residual functional capacity. AR 27; *see* AR 20. The ALJ then noted that "Dr. Cooper did not address other functional abilities." AR 27.

Plaintiff argues the ALJ failed "to consider the evidence as a whole" because he omitted details about Plaintiff's performance on the three-step command. ECF No. 13 at 10. However, the ALJ focused on and adopted Dr. Cooper's bottom-line conclusion from this test: that Plaintiff could carry out simple instructions, but not complex ones. *See* AR 26-27, 1696.

Plaintiff also argues that the ALJ did not mention that she had test results in the bottom 4th percentile and that her IQ was 59. ECF No. 13 at 10. However, the ALJ did, in fact, outline these findings. *See* AR 26. Plaintiff implies that these findings should have resulted in a more restrictive residual functional capacity, but fails to identify any additional functional limitations that Dr. Cooper provided but the ALJ failed to include. *See* ECF No. 13 at 10-11; *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Accordingly, Plaintiff fails to establish any error in the ALJ's consideration of Dr. Cooper's opinion.

///

**C.    Medical-Vocational Guidelines Rule 202.09**

Next, Plaintiff argues that the ALJ erred in not finding her disabled under Medical-Vocational Rule 202.09, which directs a decision of "disabled" when the claimant is limited to light work, is closely approaching advanced age (*i.e.*, between

the ages of 50 and 54), is illiterate or unable to communicate in English, and has work experience only in unskilled occupations. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 202.09.

However, the Medical-Vocational Guidelines only apply at step five of the sequential evaluation process—*i.e.*, when "the individual's impairment(s) prevents the performance of his or her vocationally relevant past work" and the ALJ must then determine whether the claimant is able to perform other work in the national economy. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 200.00(a). Here, the ALJ did not reach step five in the sequential evaluation because he determined that Plaintiff could return to her prior job as an agricultural sorter. *See* AR 27-28.

On remand, however, further consideration of Plaintiff's fibromyalgia may affect the residual functional capacity assessment and, consequently, may have a bearing on whether Plaintiff was able to return to her past job as an agricultural sorter. If the ALJ ultimately determines that she could not, then the ALJ will need to proceed to step five and the Medical-Vocational Guidelines will be relevant. Resolution of this issue therefore depends on what the ALJ ultimately finds on remand at step four.

**D.    On Remand, the ALJ Shall Reevaluate the Credibility of Plaintiff's Subjective Pain Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her pain symptoms. ECF No. 13 at 11-16. As discussed above, the ALJ

should have included fibromyalgia—a medical condition characterized by chronic widespread pain—as a severe impairment. Because Plaintiff's symptoms from this condition may affect the analysis with respect to whether her pain complaints were fully credible, upon remand the ALJ shall reevaluate Plaintiff's credibility after having considered her fibromyalgia.[3]

### E. The ALJ's Finding That Plaintiff Could Perform Her Past Work as an Agricultural Sorter

Finally, Plaintiff argues that the ALJ erred in finding that she could perform her past work as an agricultural sorter. ECF No. 13 at 16-17. Plaintiff's argument here just restates her prior arguments that the ALJ improperly rejected the medical opinions of Dr. Byrd, Dr. Norris, Dr. Fernandez, and Dr. Cooper. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857. However, on remand, the ALJ will reconsider whether Plaintiff could perform her past work as an agricultural sorter in light of her fibromyalgia and any additional medical evidence that is obtained.

### F. Remedy

---

[3] The ALJ discounted Plaintiff's credibility in part on the basis that she did "not appear to allege an inability to work due to her mental impairments." AR 23. This is incorrect. In her application for benefits, Plaintiff alleged that she was disabled in part due to depression, anxiety, and a learning disability. AR 263. In her prehearing brief, Plaintiff again alleged disability due to the severity of her mental health impairments. AR 360.
It also appears the ALJ discounted Plaintiff's testimony in part because she never disclosed abuse by her domestic partner, or that she did not consistently disclose the full extent of the abuse to all of her providers. *See* AR 22. This was not a legitimate basis for discounting her subjective pain complaint testimony.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER
~ 18**

Plaintiff asks the Court to remand for benefits rather than for further proceedings. ECF No. 13 at 17-18. In rare circumstances, the Court may remand for benefits when three elements are met (*i.e.*, the "credit-as-true" rule): (1) the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions; (2) further administrative proceedings would serve no useful purpose and there are no outstanding issues to resolve; and (3) if the improperly rejected medical opinions were credited as true, the ALJ would be required to find the claimant disabled on remand. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (remanding for benefits because multiple treating rheumatologists wrote detailed reports about how the claimant's fibromyalgia prohibited her from working); *see also Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). In this case, the first element is not satisfied—the ALJ gave legally sufficient reasons for rejecting the medical opinions, at least given the record currently available.

Upon remand, the ALJ shall: (1) include fibromyalgia as a severe impairment at step two, (2) further develop the record and reweigh the medical opinions if new evidence becomes available, (3) reevaluate Plaintiff's credibility, (4) offer Plaintiff the opportunity for a new hearing, and (5) recalculate the residual functional capacity considering all impairments (including fibromyalgia) and then evaluate Plaintiff's ability to perform past relevant work and, if need be, her ability to perform other work available in the national economy. If necessary, the ALJ shall

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER**
~ 19

obtain supplemental evidence from a vocational expert. The ALJ shall then issue a new decision.

## VIII.  Order

Having reviewed the record, the ALJ's findings, and the parties' briefing, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. The Commissioner's decision to deny Plaintiff's application for Social Security benefits is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment shall be entered in favor of Plaintiff and against Defendant and the file shall be **closed**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this May 29, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge
